The Honorable Courtney Sheppard State Representative P.O. Box 1132 El Dorado, Arkansas 71731-1132
Dear Representative Sheppard:
This is in response to your request for an opinion on the following question:
 How many signatures will the Libertarian Party be required to collect in order to be on the 2000 ballot?
You have enclosed some additional information with your original request, which rephrases the question posed as follows:
 How many signatures will the Libertarian Party be required to collect in order to be on the 2000 ballot, given that the U.S. District Court, Eastern District of Arkansas, Judge George Howard, said in Citizens to Establish a Reform Party in Arkansas v. Priest, 970 F.Supp. 690
(1996), on pages 698-699, finding # 18, that since the state only requires 10,000 signatures for a statewide independent candidate, it is unconstitutional for the state to require more than 10,000 signatures for a new party?
RESPONSE
In my opinion the answer to the question you pose is found in A.C.A. §7-7-204. This statute was enacted after the issuance of the court decision cited above. The statute requires the collection of signatures in the amount of 3% of the total number of votes cast for Governor or nominees for presidential electors at the last preceding election, whichever is less. Although the court in Citizens to Establish a ReformParty found this same percentage requirement constitutionally objectionable, the court's decision was not based upon this requirement in isolation, but, rather, was based upon a number of factors arising from the then statutory scheme. The relevant statutory scheme has, since the issuance of the court's decision, been liberalized as regards the filing deadline, and in other respects important to the court's decision. The question posed is whether the 1997 amendments are sufficient to alleviate any constitutional concerns, or whether the District Court ruling would nonetheless require collection of only 10,000 signatures.
In my opinion A.C.A. § 7-7-204, as amended by Acts 1997, No. 886, sets the signature requirement at 3% of the total number of votes cast for the Office of Governor or nominees for presidential electors at the last preceding election, whichever is less.[1] This new statute enjoys a presumption of constitutionality, and in my opinion, contains the appropriate signature requirement absent a new injunctive judicial ruling on the point.
Pertinent sections of the court's ruling in Citizens to Establish aReform Party v. Priest, 970 F.Supp. 690 (E.D. Ark. 1996) will be discussed below in an effort to highlight the basis of the court's decision and the changes made to the law after its rendition. Important points in the court's analysis included the fact that the filing deadline for new political parties to file their signatures was, under former law, January 2.[2] This deadline was held to be unconstitutionally early, in that it is difficult, this far in advance of the election, to garner interest in political activities. Id. at 698. The holiday season and inclement weather occurring around this deadline also played a role in the ruling. Id. at 698, 692. The court also found an unconstitutional distinction between requiring the 3% signature collection figure for new political parties, and requiring this same amount, or, in thealternative, 10,000 signatures for a statewide independent candidacy. No such alternative lesser figure was afforded proponents of a new political party and the district court found this distinction unconstitutional.[3]Id. At 698, 699. Also mentioned in the district court's findings of fact was the fact that new political parties were allowed no additional period to "cure" signatures found to be insufficient by the Secretary of State.Id. at 693. In addition, the court's findings of fact indicated that there were at the time no "statutory guidelines or requirements as to who, if anyone, must approve the petition, whether the petition must contain a circulator's verification under oath to the qualified elector status of each signatory . . . and the procedure to be followed by the Secretary of State in verifying the petition signatures." Finally, the court found the pertinent statutes "void for vagueness," in light of the fact that the statutes were unclear, did not clearly outline the conduct required, and gave public officials unreviewable discretion in enforcing the statute.
The court stated specifically, with regard to the signature requirement, as follows:
 First, The Arkansas Legislature has arbitrarily chosen to apply both the same standard and a different standard for proponents who advance independent candidates in contrast to proponents who advance a new political party. On the one hand, both can demonstrate a satisfactory showing of support with a 3% signature requirement. On the other hand, an independent candidate for statewide office may, in the alternative, meet the requirement with 10,000 signatures. Such an arbitrary classification makes it unreasonably difficult for proponents to advance new political parties while allowing independent candidates to be placed on the ballot with even less public support. Second, as discussed previously, ballot access and voters' interests in the political process constitute fundamental rights which this Court must review with the strictness [sic] of scrutiny. Third, the State cannot advance any compelling interest or rational basis supporting this discriminatory and arbitrary classification.
* * *
 . . . if 10,000 signatures are sufficient to demonstrate a modicum of support for an independent candidate . . . then 10,000 signatures are also sufficient to demonstrate a modicum of support for a new political party, especially where the legislature has also established that a sufficient demonstration of a modicum of support is established in both instances by a 3% signature requirement. Proponents of a new political party in Arkansas must be afforded the corresponding opportunity to submit a finite number of signatures as an alternative to a percentage fixed by statute. Moreover, the finite number of signatures that should be allowed for the creation of a new political party should be the same as the finite number alternative established, by the Arkansas Legislature for an independent candidate, given the common fundamental rights involved in both instances.
Id. at 698, 699.
As noted above, the Arkansas Legislature amended the pertinent statutes after the court's decision. Section 7-7-204 of the Arkansas Code now provides in pertinent part as follows:
 (a) A group desiring to form a new political party shall do so by filing a petition with the Secretary of State. The petition shall contain at the time of filing the signatures of qualified electors of this state equal in number to at least three percent (3%) of the total number of votes cast for the Office of Governor or nominees for presidential electors, whichever is less, at the last preceding election. The petition shall be filed with the Secretary of State no later than the first Monday in May before the general election. The petitions shall be circulated during the period beginning one hundred and fifty days prior to the deadline for filing the petitions with the Secretary of State.
* * *
 (c) The petition shall contain the form of verification as set forth in § 7-9-109.
 (d) The Secretary of State shall determine the sufficiency of the signatures submitted within thirty (30) days of filing.
 (e) If the petition is determined to be insufficient, the Secretary of State shall forthwith notify the sponsors in writing, through their designated agent, and shall set forth his reasons for so finding. When the notice is delivered, the sponsors shall have an additional fifteen (15) days in which to do any or all of the following:
(1) Solicit and obtain additional signatures;
 (2) Submit proof to show that the rejected signatures, or some of them, are good and should be counted;
(3) Make the petition more definite and certain.
* * *
 (g) Upon certification of sufficiency by the Secretary of State, a new political party shall be declared by the Secretary of State. A new political party formed by the petition process may nominate candidates by convention for the first election after certification. If the new party maintains party status by obtaining three percent (3%) of the total vote cast for the Office of Governor or nominees for presidential electors at the first election after certification, the new political party shall nominate candidates in the party primary as set forth in § 7-7-101, et seq.
 (h) Any challenges to the certification of the Secretary of State shall be filed with the Pulaski County Circuit Court.
A.C.A. § 7-7-203 (emphasis added). See also § 7-1-101(1)(A) (Supp. 1997).
As can be seen from the statute above, the filing deadline has been changed from January 2 to the first Monday in May. A.C.A. § 7-7-204 (a). A period is afforded to cure deficient signatures after submission. A.C.A. § 7-7-204 (e). An oath and verification is now required. A.C.A. §7-7-204(c). The procedure for the Secretary of State's certification is outlined. A.C.A. § 7-7-204. The vagueness concerns, and the "unreviewable discretion," have been lessened. A.C.A. § 7-7-204(a) (c), (d), (e), (g) and (h).
The question, despite all these changes to the statute, is whether the statute is unconstitutional based upon the failure to liberalize the number of signatures required. In my opinion the new statutory scheme is presumed constitutional, and sets the signature requirement in the absence of a judicial ruling to the contrary.
Although the district court referred several times in its opinion to the "individual" as well as the "combined" effect of the Arkansas statutes placing unreasonable burdens on the plaintiffs (see 970 F.Supp. at 694,696, 697 Conclusions of Law 5, 9 and 12), the court also stated that: "[w]hen examining the entire statutory scheme, it is important to evaluate the combined effect of the statutory requirements. RepublicanParty of Arkansas v. Faulkner County, 49 F.3d 1289 (8th Cir. 1995). The combined effect of the early deadline in conjunction with the 3% requirement of Ark. Code Ann. § 7-1-101(1)(A) places an unreasonable burden of [sic] federally protected constitutional rights." Id. at 699.
It is my opinion, because the statutory scheme has been substantially modified after the rendition of the federal court's decision, that the new statutory scheme is presumed constitutional and sets the appropriate signature requirement absent a controlling injunctive court order to the contrary.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] It is my understanding that the Secretary of State calculates the total number at 706,011. Three percent of this figure is therefore 21,180.
[2] This deadline was unclear under former law. Two different statutes set two different deadlines. The Arkansas Supreme Court in Citizens toEstablish a Reform Party v. Priest, 325 Ark. 257, 926 S.W.2d 432 (1996), rendered shortly before the district court's ruling, found the correct statutory deadline to be January 2.
[3] Independent candidates for statewide office retain the option, under current law, of submitting 10,000 signatures. See A.C.A. §7-7-103(b)(2) as amended by Act 77 of 1999.